# STATE OF TENNESSEE ex rel., etc. v. LEONARD F. SEXTON et al.—368 S.W. (2d) 69.

Eastern Section. December 4, 1962.

Certiorari Denied by Supreme Court May 10, 1963.

386

George Buxton, Wartburg, and Hooker, Keeble, Dodson & Harris, Nashville, for appellant Leonard F. Sexton.

Harry J. Joyce, Wartburg, for appellant Morgan County.

Ladd & Qualls, Harriman and Waller, Davis & Lansden, Nashville, for appellant receivers of Lone Mountain Co.

Henry C. Foutch and David M. Pack, Assistant Attorneys General, Nashville, J. H. McCartt, Wartburg, and W. P. O'Neil, Knoxville, for appellee.

McAMIS, P. J. This suit involves the validity of a tax title under which the State of Tennessee claims to own 3500 acres of wooded mountain land in Morgan County, set apart on February 1, 1939, as a State Forest, under Chapter 166, Acts of 1933, and Chapter 265, Acts of 1937, by proclamation of Governor Prentice Cooper.

The bill was filed on February 1, 1958, on relation of the Attorney General and the Commissioner of Conservation of the State, against Leonard F. Sexton to enjoin him from cutting timber on the land and for a decree sustaining the State's title and right to possession under a decree of the Chancery Court of Morgan County confirming a sale of the land for State and County taxes for the year 1925, and purporting to divest title out of Lone Mountain Company and vest it in the State of Tennessee, implemented by a deed of the Clerk and Master to the State, dated October 22, 1938. The State also based its claim upon the proclamation of the Governor mentioned above.

Leonard Sexton answered the bill on February 22, 1958, admitting that on the 22nd day of October 1938, the Clerk and Master executed "an instrument," a copy of which was filed as an exhibit to the bill, but averring that, if a deed, it is void on its face. It was also denied that the State acquired any title or right of possession under proclamation of the Governor. While denying a

trespass upon the land, the answer contains no reference to a contract from Morgan County upon which defendant Sexton now bases his right to cut and remove timber.

On August 29, 1958, Morgan County filed an intervening petition alleging that the State, although requested to do so by the County, had not complied with T.C.A. sec. 67-2041 providing for the division of lands sold to the State for delinquent State and County taxes on the basis of the amount of taxes due each.

The State filed a motion to strike the petition on the ground, among others, that the State can not be sued without its consent and that the decree confirming the sale of the land for taxes and vesting title in the State was prior to the passage of Chapter 56, Acts of 1935, upon which the petitioner based its claim to a division of the land. The motion to strike was overruled.

On October 9, 1959, after the greater portion of the proof had been taken by depositions, Lone Mountain Company sought to intervene and become a party to the suit for the purpose of setting up the invalidity of the State's title. Over the objections of both the State and Morgan County the Receivers of Lone Mountain Company were allowed to intervene *"to be made a party defendant to the original petition."*

On October 24, 1959, the Receivers filed their answer alleging that the tax proceedings under which the State claims title were void because Lone Mountain Company was never a party to the suit, having never been served with process, and because no pro confesso was ever entered against it. The answer further denied that the State acquired any rights by virtue of the proclamation

of the Governor attempting to incorporate the lands of Lone Mountain Company into Morgan County State Forest. The answer asserts that the decree confirming the sale for taxes and the Clerk and Master's deed were invalid for lack of a sufficient description of the property.

With their answer the Receivers of Lone Mountain Company tendered into Court the sum of $668.20, the amount claimed to be due for taxes when the tax bill was filed for the year 1925, and, assuming the role of cross complainants, the Receivers prayed that the Court adjudge the tax proceeding and the Governor's proclamation void and that they be cancelled as a cloud on cross complainant's title.

To the cross bill of the Receivers, the State demurred on the grounds among others (1) that under Article 1, Section 17 of the Constitution of Tennessee the State is immune from suit without its consent and (2) the order allowing them to intervene permitted the Receivers to enter only as defendants.

The Chancellor filed a memorandum opinion in which he found that Morgan County, basing its claim upon a right to a proportionate part of the land under T.C.A. sec. 67-2041, and the failure of the State to comply with the provisions of that statute, entered into a contract with the defendant Sexton for the cutting of timber. The Chancellor further found that the State went into possession of the land in 1929 and, after recording the Clerk and Master's deed in 1939 and after the proclamation of the Governor in that year, the land was placed under the jurisdiction of the Department of Conservation.

The Chancellor held that Morgan County can not assert title to lands "dedicated for a State Forest in this circuitous fashion" and, accordingly, sustained the motion of the State to strike its intervening petition. Since defendant Sexton's right to cut and remove timber derives solely from Morgan County it was held that he had cut timber without right to do so and the temporary injunction should be made permanent.

The Chancellor found that Lone Mountain Company had paid no taxes for 30 years prior to filing its intervening petition; that it had notice of the tax proceeding to sell the land for 1925 taxes and thereafter never claimed to own the land but only claimed the timber under a purported reservation of timber contained in the Clerk and Master's deed to the State; that in the intervening years the Court file in the tax suit had been stripped of everything except the jacket and one subpoena to answer, making it difficult to prove notice or service of process upon Lone Mountain Company and that Lone Mountain Company can not take advantage of the loss of proof caused by its long delay in asserting its claim. Following the unreported decision of this Court in Patton v. Cofer, Roane Equity, November 6, 1953, the Chancellor under these circumstances found Lone Mountain Company guilty of laches.

The final decree sustained the demurrer to the cross bill of the Receivers and decreed that the State is the owner of the lands in controversy and entitled to the possession thereof as against all parties to this suit. From that decree Leonard F. Sexton, Morgan County and the Receivers of Lone Mountain Company have appealed and separately assigned errors.

The assignments of the Receivers of Lone Mountain in strict form relate entirely to the action of the Chancellor in sustaining the grounds of the State's demurrer to the cross bill. This action, however, left the Receivers parties to the suit as defendants and in their brief the Receivers have insisted there is no proof to sustain the Chancellor's finding of notice to Lone Mountain Company in the tax suit and that the tax title of the State is void for that reason.

Defendant Sexton in addition to attacking the State's title on the ground of lack of notice to the Lone Mountain Company insists the decree divesting title as well as the Clerk and Master's deed conveyed no title to the State because the description contained in both is inadequate to identify the property.

The petition of Morgan County to intervene made no attack upon the State's title but on the contrary expressly states:

"In view of complainant's insistence through the years and particularly its insistence as set out in the original bill, the petitioner assumes for the purpose of this cause of action only that the said tax sale and subsequent deed was valid."

Its petition is limited to the single insistence that under T.C.A. sec. 67-2041 it is entitled to have the land partitioned and that the State should be repelled from a court of equity so long as it resists the exercise of that right and until it recognizes it.

The original bill in the tax suit, styled State of Tennessee and Morgan County v. Delinquent Taxpayers of Morgan County 1925-1926, is missing from the court

file but the decree confirming the Master's report of sale describes the various properties sold including:

"Lone Mountain Company 4th District, bounded on the North by Chapman; on the South by Winslow; on the East by Langley; on the west by C.S. R. R., 3500 acres, valued at $25,000.00; min. int. John Williams 100 A. valued $200.00; min. int. in Frank Shannon tract, 27 A. valued $500.00, total value $25,000.00 Tax, $668.20"

The decree recites that the owners of the various properties described were defendants in the case.

The deed executed by the Clerk and Master in 1938 contains the same description above the signature of the Clerk and Master but between his signature and the acknowledgment there appears several pages of description by metes and bounds. This latter description contains the following: "excluded, however, merchantable timber upon said land above 10 inches in diameter (pine 8 inches) heretofore sold to N. J. Wimbro, P. A. Wimbro and R. S. Wimbro of Whaleyville, Maryland."

Apparently, it was upon the basis of this purported exclusion that Lone Mountain Company through the years has claimed timber rights.

We can not say the evidence preponderates against the Chancellor's finding that Lone Mountain Company had notice of the proceeding to collect 1925 delinquent taxes. It is true the President of the Company, an attorney for whom this court entertains the greatest respect, testifying in 1959 at the age of 93 when his memory was dulled by age and the passing of time, said he knew nothing of the suit. There may have been other officers

upon whom service of process could have been served. The tax suit may have been lost sight of as it appears without dispute that after 1925 the Company made no effort to keep its taxes paid as none were paid after that time until the bill in this case was filed and the tender of taxes for 1925 only was made.

It appears without dispute that in the intervening years the Company through its President had numerous conferences with Assistant Attorney General Foutch in an effort to obtain a settlement from the State for timber rights. No claim was put forward in any of these conferences that the State failed to acquire the fee title because of any defect in the tax proceeding which constituted the sole basis of such ownership as it had. The claim, in all of these conferences, was limited to timber rights and finally resulted in the insertion of a provision in the Miscellaneous Appropriations Bill, Chapter 230, Public Acts of 1955, appropriating the sum of $25,000.00 for timber rights claimed by Lone Mountain Company subject to the action of the State Board of Claims. A petition for an allowance for timber rights only was pending before that body when the petition of Lone Mountain Company was filed in this case.

The Chancellor may have concluded that the circumstance that during nearly thirty years following the sale and nearly twenty years following the Clerk and Master's deed and the proclamation of the Governor there was never any claim of lack of notice outweighed the testimony of the President of the Company. The fact that the subpoena to answer addressed to the sheriff of Morgan County, the only paper left in the Court file, failed to list Lone Mountain Company as a defendant is of no significance since the situs of the Company was in Roane

County, and the failure of the Clerk and Master to list the name of Lone Mountain Company on the rule docket as a defendant is not of great probative value in view of the testimony that in some cases only the name of the first defendant named in the caption of a bill was copied on the rule docket.

Was the description contained in the decree divesting title above copied sufficient to vest title in the State?

The claim of insufficiency of description is predicated on proof that the calls for adjoining landowners is incomplete. Ross W. Stone, an engineer and witness for the State, testified that he was familiar with the Lone Mountain tract and with other lands near it and that C. S. R. R. appearing in the description above copied refers to Cincinnati-Southern Railroad. He was asked and answered:

"Mr. Stone, with all your knowledge of Morgan County and familiarity with the roads and land in this county over a period of twenty years, do you know of any other tract that would have that description in this county?

"I don't."

The land is described in the decree confirming the sale as containing 3500 acres located in the 4th civil district. Four of the adjoining landowners are named although, as shown by the proof, this left considerable gaps on two sides of the land. There is no suggestion that Lone Mountain Company owned any other land in the 4th Civil District of Morgan County.

A description of land by naming adjoining landowners is not necessarily invalidated by failure to name all such

owners. Only such reasonable certainty is required as will fairly identify the land and enable a purchaser to learn what land he purchased. Easley v. McLaren, 60 Tenn. 1. Cf. State ex rel. v. Collier, 160 Tenn. 403, 23 S. W. (2d) 897; City of Bristol v. Delinquent Taxpayers, 179 Tenn. 604, 168 S. W. (2d) 782.

In this case the undisputed proof shows that the State went into possession of the 3500 acres of land described by metes and bounds in the description attached to the Clerk and Master's deed and continued in the undisputed possession of it for nearly thirty years.

. While a Clerk and Master's deed executed pursuant to a decree of the Chancellor can not add to or vary the terms of the decree, we think it can be considered as implementing such decree. There is no conflict between the general description above copied and the metes and bounds description in the Clerk nd Master's deed and there is no question that the latter description properly describes the land owned by the Lone Mountain Company in the 4th Civil District of Morgan County at the time the bill was filed for 1925 taxes.

We are of opinion the metes and bounds description is to be considered a part of the Clerk and Master's deed although appearing between his signature and the certificate of acknowledgement. In executing the deed the Clerk and Master was performing an official act. The presumption is that he was acting properly and within his official competence and inserted the metes and bounds description for the purpose of effectuating the decree of the Chancellor.

"As a general rule, it is not essential, under the statute of frauds, that the name of the party whose signature is

required, or who is required to sign a contract, be subscribed; the writing of his name at the top, in the body, or at the bottom of the instrument is sufficient if it is written for the purpose of giving authenticity to the instrument. It is generally conceded that it is not essential to the validity of a deed that the signature of the grantor be placed at the end of the deed, where the law requires signing only, provided the signature is in such position that it is manifestly applicable to the whole deed. * * *'' 16 Am. Jur. 491, Deeds, Section 94.

Our conclusion is that under all the circumstances the land was sufficiently described.

▮ It does not follow, however, that the reservation of timber rights which in some unexplained manner seems to have crept into the metes and bounds description used by the Clerk and Master left Lone Mountain Company the owner of such rights. As we have said, a Clerk and Master's deed only implements a decree of sale. It can not vary or add to the decree. The 1929 decree of the Chancellor divesting and vesting title makes no mention of timber rights. In purporting to reserve such rights the deed is, therefore, at variance with the decree and the purported reservation can not be given effect.

▮ We find without merit the insistence that the failure to enter a pro confesso invalidates the decree confirming the Master's report of sale. Under the Chancellor's finding in which we concur Lone Mountain Company was before the Court. Had it chosen to do so it could have had a review of this omission by writ of error at any time within two years. It can not now raise the question in a collateral attack upon the decree. A

decree pro confesso is not a necessary prerequisite to the entry of a final decree against a party regularly before the court who has failed to answer. Sewell v. Tuthill & Pattison, 112 Tenn. 271, 79 S. W. 376; Henry v. White, 195 Tenn. 383, 259 S. W. (2d) 862; Grace v. Johnson, 25 Tenn. App. 355, 157 S. W. (2d) 848; Keene v. Wilkerson, 45 Tenn. App. 455, 459, 325 S. W. (2d) 286.

The Chancellor correctly sustained the State's demurrer to the cross bill on two distinct and independent grounds. The first is that the filing of the cross bill was an attempt to sue the State without its consent contrary to Article 1, Section 17. Cases relied upon by the Receivers holding the immunity of the sovereign from suit waived under certain conditions where it voluntarily enters its appearance are inapposite here because the State had not attempted to assert any right against the Receivers when the cross bill was filed. The other ground is that the petition only sought permission to file and the Chancellor permitted only the filing of, an answer. The filing of the cross bill in a suit to which Lone Mountain Company had not been made a party was, therefore, unauthorized.

We doubt the propriety of allowing the Receivers to intervene as defendants. We have no doubt of the correctness of the Chancellor's refusal to entertain the cross bill not only because of the immunity of the State but because to have done so would have permitted the Receivers to inject matters appropriate only to an original bill and would have injected multifarious issues into the case with resulting confusion, perplexity and delay

without compensating advantages. See Gibson's Suits in Chancery, Higgins and Crownover, Section 796.

To sustain the bill against Sexton who was a trespasser, Winborn v. Alexander, 39 Tenn. App. 1, 279 S. W. (2d) 718, it would have been necessary for the State to show only that it was in actual or constructive possession of the land under its deed. East Tennessee Natural Gas Company v. Peltz, 38 Tenn. App. 100, 270 S. W. (2d) 591; Scott v. Goss, 43 Tenn. App. 659, 311 S. W. (2d) 326. As is apparent from what has been said the intervention of the Receivers introduced vastly different and more complicated issues in what otherwise would have been a simple action to enjoin a trespass. To have entertained the cross bill would have expanded the issues still more.

The assignments directed to the action of the Chancellor in sustaining the demurrer are overruled without the necessity of considering other questions raised by the demurrer.

 Turning to the appeal of Morgan County, we note that the statute, Chapter 56, Acts of 1935, T.C.A. sec. 67-2041, upon which alone the County predicates its claim was enacted six years after the decree vesting title in the State. The statute can not be applied retroactively in the manner urged by the County. But if it could, the County would still have no right to sell the timber from jointly owned property. The statute delineates the remedy for securing its benefits and provides no other.

Since the County had no title it could confer on defendant Sexton no right to cut timber.

In reaching the conclusion indicated it has not been necessary to consider the questions of laches, estoppel and the effect of the Governor's proclamation appropriating the land as a State Forest.

We find no error. The decree is in all respects affirmed and the cause remanded. Costs will be taxed to appellants.

Avery, (P. J. W. S.), and Cooper, J., concur.