James T. MORROW and wife, Donna J. Morrow, et al, Plaintiffs/Appellees,

v.

Betty BOBBITT in her capacity as County Trustee for Fayette County, Tennessee, and Anne Hill, Defendants/Appellants.

Court of Appeals of Tennessee, Western Section,
at Jackson.

Aug. 16, 1996.

Application for Permission to Appeal
Denied by Supreme Court
March 3, 1997.

James F. Arthur, III, Germantown, for Defendant/Appellant Anne Hill.

J. Payson Matthews, Somerville, for Defendant/Appellant Betty Bobbitt, Trustee.

C. Thomas Cates, R. Porter Feild, Burch, Porter & Johnson, for Plaintiffs/Appellees.

**FARMER, Judge.**

In this case, Defendant–Appellant, Dr. Anne Hill ("Dr. Hill" or "Defendant"), appeals the decision of the Chancery Court of Fayette County, setting aside a tax deed challenged by Plaintiffs–Appellants, James T. Morrow, Donna Morrow, John Berry Morrow, Donnie Steve Morrow, Gerald Russell Morrow, Jr. and Tracy Ann Morrow Medley (the "Morrows" or "Plaintiffs").

All pertinent facts are undisputed: Since 1980, James and Donna Morrow have owned and possessed a 1.55 acre tract of property in Fayette County, Tennessee upon which they have maintained a home. As a result of a series of prior conveyances between family members, James Morrow holds a two-fifth undivided interest in this tract, Donna Morrow holds a one-tenth undivided interest, John Morrow and Donnie Morrow both hold a one-fifth undivided interest, and Gerald

Morrow, Jr. and Tracy Ann Morrow Medley each hold a one-tenth undivided interest.

In 1988, James and Donna Morrow, the possessory owners of the property, failed to pay Fayette County property taxes on the tract. In 1990, the Fayette County Property Assessor filed a delinquent tax suit in the Chancery Court of Fayette County seeking 1988 property taxes for the tract and naming James and Donna Morrow as defendants. James and Donna Morrow were duly served with process. In May 1991, a default judgment was entered against them in the amount of $417.07 plus interest, penalties and costs.

James and Donna Morrow failed to satisfy the judgment within the thirty day period after the filing of the judgment. Consequently, pursuant to T.C.A. § 67–5–2502, the Fayette County Trustee advertised the property to be sold at a tax sale to be held on July 31, 1991. The notice and advertisement of said sale appeared in the local newspaper, the *Fayette County Review,* as follows:

### DELINQUENT TAX SALE

In accordance with the provisions of Section 67–5–2502, Tennessee Code Annotated, this is the first and final publication of this sale.

### CHANCERY SALE OF REAL ESTATE CHANCERY COURT OF FAYETTE COUNTY, TENNESSEE

Date of Sale: Friday, July 31, 1991

Time of Sale: 10:00 a.m.

PLACE OF SALE: South door, Courthouse, Somerville, Tennessee

REASON FOR SALE: Delinquent taxes owing County of Fayette

THE STATE OF TENNESSEE IN ITS OWN BEHALF AND FOR THE US [sic] AND BENEFIT OF FAYETTE COUNTY, TENNESSEE, AND THE TOWN OF SOMERVILLE, TENNESSEE PLAINTIFFS

NO. 8701(CONSOLIDATED)

VS.

DOROTHY ADAMS, ET AL., DEFENDANTS

By virtue of decree(s) for sale entered in the above styled cause on May 30, 1991, in Minute Book 27, Page 769, of the Chancery Court of Fayette County, Tennessee, I will sell separately at public auction to the highest and best bidder for cash, at the South door of the Courthouse in Somerville, Tennessee, Wednesday, July 31, 1991, commencing at 10:00 o'clock a.m. to satisfy the lien for unpaid city and county taxes, the hereinafter described property situated in Fayette County, Tennessee.

No payment of taxes, interest, penalties and costs will be accepted on the day of sale because of insufficient time to handle the administrative details incident to such a procedure.

Listed preceding the description of each parcel to be sold in the sum total of all city and county taxes for which the sale is being made and being inclusive of taxes, interest, penalties, attorneys fees, clerk's fees, and costs through the year 1988, plus publication and other costs.

Terms of Sale: Cash, subject to the equity of redemption of two years and subject to all taxes subsequent to the tax year 1988.

Said parcels of property together with the names of the owner(s), the total of all taxes, interests, penalties, fees and costs are described as follows, to-wit:

. . . .

*PARCEL NO. 90:* Sold as property of James T. Morrow and wife, Donna J. Morrow, their unknown heirs or devisees. Total County taxes, fees and costs for the year 1988 $417.07 plus publication costs. Tax Roll: Map 100, Parcel 601.

**1.55 acres in Civil District 8 of Fayette County, Tennessee as more particularly described in deed of record in Book 239, Page 59 of the Register's Office of Fayette County, Tennessee to which reference is here made for a full and complete description.**

The parties agree that this notice and advertisement misstated the applicable period for redemption of property sold for delinquent taxes. On June 4, 1991, prior to the publication of the notice and advertisement,

the statutory right of redemption for property sold at a tax sale was reduced from two years after entry of an order of confirmation to one year after entry of an order of confirmation by 1991 Tennessee Public Acts ch. 470 §§ 1, 4–5. The amendment, according to its terms, applied to all tax sales held after June 4, 1991. 1991 Tenn. Pub. Acts ch. 470 § 5. It is not clear from the record how the error came to be published in the *Fayette County Review*. However, at the time of the tax sale, the County Trustee, evidently aware of the mistake in the notice and advertisement, made an announcement at the tax sale that the proper period of redemption was one year from the date of entry of an order of confirmation.

Dr. Hill purchased the Morrows' property at the tax sale for $1,000. On September 1, 1992, one year and fifteen days after the order of confirmation was entered, the Fayette County Clerk and Master issued Dr. Hill a tax deed to the property. After obtaining the tax deed, Dr. Hill telephoned James and Donna Morrow and informed them that she held a tax deed to the property. Shortly thereafter, James Morrow attempted to pay the delinquent taxes and redeem the property, however, the Clerk and Master refused his tender.

In December 1992, Dr. Hill obtained a writ of forcible entry and detainer for the property. On December 8, 1992, James and Donna Morrow brought this action against Dr. Hill and Betty Bobbitt, in her capacity as Fayette County Trustee, seeking to enjoin execution on the judgment and to set aside the tax sale or, alternatively, to redeem the property based upon the erroneous equity of redemption stated in the notice.

After the filing of the original complaint, Donnie Steve Morrow, John Berry Morrow, Gerald Russell Morrow, Jr. and Tracy Ann Morrow Medley filed motions to intervene and to amend the complaint to become party plaintiffs. The trial court granted these motions. Each of these intervening parties alleged that they had an interest in the subject property and that they had not received proper notice of the tax sale due to the fact that their names were omitted from the notice that appeared in the *Fayette County Review*. They asked that the tax sale be set aside due to this omission as well as the inaccurate statement concerning the period of redemption for property sold at a tax sale.

Prior to trial, both Dr. Hill and the Morrows filed motions for summary judgment. After hearing argument from both parties, the trial court granted summary judgment to the Morrows, holding that:

[T]here is no genuine issue as to any material fact regarding the defective Notice and Advertisement of the sale for taxes of the plaintiffs' property involved in this case ... therefore, said sale did not substantially comply with the applicable law and plaintiff is entitled to redeem the subject property upon making defendant Anne Hill whole by paying to her interest at the rate of ten percent (10%) per annum on the sum of $1,000.00 which she paid for the property at the time of the tax sale and her reasonable attorney fees.

Dr. Hill has appealed the trial court's decision, presenting the following issues for our review:

I. The trial court erred, as a matter of law, in granting Appellees' motion for summary judgment and denying Appellant's motion for summary judgment.

II. If the trial court did not err in granting Appellees' motion for summary judgment, it erred in the foundation of the relief afforded thereon.

We begin our analysis by noting that a trial court should grant a motion for summary judgment only if the movant demonstrates that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. Rule 56.03 T.R.C.P.; *Byrd v. Hall*, 847 S.W.2d 208, 210 (Tenn.1993); *Dunn v. Hackett*, 833 S.W.2d 78, 80 (Tenn.App.1992). When a motion for summary judgment is made, the court must consider the motion in the same manner as a motion for directed verdict made at the close of the plaintiff's proof; that is, "the court must take the strongest legitimate view of the evidence in favor of the nonmoving party, allow all reasonable inferences in favor of that party, and discard all countervailing evidence." *Byrd*,

847 S.W.2d at 210–11. In *Byrd*, the Tennessee Supreme Court stated:

> Once it is shown by the moving party that there is no genuine issue of material fact, the nonmoving party must then demonstrate, by affidavits or discovery materials, that there is a genuine, material fact dispute to warrant a trial. [Citations omitted.] In this regard, Rule 56.05 provides that the nonmoving party cannot simply rely upon his pleadings but must set forth *specific facts* showing that there is a genuine issue of material fact for trial.

*Id.* at 211 (emphasis in original).

The summary judgment process should only be used as a means of concluding a case when there are no genuine issues of material fact, and the case can be resolved on the legal issues alone. *Id.* at 210 (citing *Bellamy v. Federal Express Corp.*, 749 S.W.2d 31, 33 (Tenn.1988)).

In the instant case, Dr. Hill argues that the trial court erred as a matter of law in determining that the tax sale in question did not substantially comply with the applicable law due to the defective notice of the tax sale. We agree.

At trial, Plaintiffs alleged that the notice contained two fatal defects. First, they alleged that the notice and advertisement was fatally defective because it erroneously stated that there was a two-year period of redemption for the property. Second, they argued that the notice and advertisement was fatally defective because it did not contain the names of the non-possessory owners of the property. As noted *supra*, the trial court found that the first defect was enough to invalidate the tax sale, and the court did not address the effect of the County's omission of the names of the non-possessory owners from the notice and advertisement.

In response to the Morrows' arguments, Dr. Hill argues generally that T.C.A. § 67–5–2504 limits attacks on tax deeds to instances where (1) the land was not liable to sale for taxes, or (2) the taxes for which the land was sold had been paid prior to sale.[1] We cannot agree with Dr. Hill's contention. In *Rast v. Terry*, 532 S.W.2d 552 (Tenn. 1976), our Supreme Court, considering the applicability of T.C.A. § 67–2025, the predecessor to T.C.A. § 67–5–2504, stated that "the applicability of this Code section must yield to the proposition that a void decree will not support a tax title and the statute presupposes a valid vestiture of title in the purchaser." *Id.* at 555. Thus, it is clear under *Rast* that a tax title can be invalidated due to procedural irregularities in connection with the tax sale. *Id.*

We turn then to the question of whether the notice of sale and advertisement published in the *Fayette County Review* was fatally defective so as to invalidate the tax sale. We consider first the Morrows' contention that the misstated period for redemption should invalidate the tax sale. In respect to notices for the sale of land, T.C.A. § 67–5–2502 provides in pertinent part:

> (a)(1) In the event of a sale under a decree of the court, the property shall be advertised in one (1) sale notice, which notice shall set out the names of the owners of the different tracts or parcels of land and which shall describe the property and set out the amount of judgment against each defendant. The description of the property shall include a concise description, which means a reference to a deed book and page which contains a complete legal description of the property, and may also include a common description of the property, which may include street name and number, map and parcel number, number of acres, or any other description which

1. T.C.A. 67–5–2504 (1994) provides in pertinent part:

(b) A tax deed of conveyance shall be an assurance of perfect title to the purchaser of such land, and no such conveyance shall be invalidated in any court, except by proof that the land was not liable to sale for taxes or that the taxes for which the land was sold have been paid before the sale; and if any part of the taxes for

which the land was sold is illegal or not chargeable against it, but a part is chargeable, that shall not affect the sale, nor invalidate the conveyance thereunder, unless it appears that before the sale the amount legally chargeable against the land was paid or tendered to the county trustee, and no other objection either in form or substance to the sale or the title thereunder shall avail in any controversy involving them.

might help identify the property as it is commonly known. The purpose of the common description is to help identify the property which is described in the concise description. Any error or defect in the common description shall not in any way void any sale of the property; provided, that the concise description makes accurate reference to the last conveyance of the property by correct reference to a deed book and page.

(2) The advertisement may be by publication in a newspaper as required by subdivision (a)(1), or by printed handbills as the courts may decree.

(3) Notice to parties or others in delinquent tax suits and sales shall be governed by the Tennessee Rules of Civil Procedure, and may be forwarded to the address of an owner of the property which is on record in the office of the assessor of property.

(b) It is the responsibility of the property owner to register the property owner's name and address with the assessor of property of the county in which the land lies. '

(c)(1) Any person claiming an interest in taxable real property who is not in possession of that property shall be deemed to have waived any right to notice provided by § 67–5–2415 or this section unless such person shall file a statement declaring such interest with the assessor of property.

(2) Such statement shall be on a form prescribed by the assessor of property and shall include:

(A) A description of the interest claimed;

(B) The name of the person in possession of the property; and

(C) The address to which any such notice is to be sent.

(3) Any person claiming an interest and not waiving right to notice provided by § 67–5–2415 or this section shall file the statement required by this subsection annually between December 1 and December 31.

T.C.A. § 67–5–2502 (1994).

Tennessee courts have consistently held that statutory provisions setting forth the procedure for issuing notice require substantial compliance. *See Clapp v. Knox County,* 197 Tenn. 422, 273 S.W.2d 694, 698 (1954) (holding statute setting forth procedure for notice of a hearing on a petition for a change in zoning regulations requires substantial compliance); *Southern Blow Pipe & Roofing Co. v. Grubb,* 36 Tenn.App. 641, 260 S.W.2d 191, 197 (1953) (recognizing that statute setting forth procedure for notice of recording of a mechanics lien requires substantial compliance); *Scott v. Goss,* 43 Tenn.App. 659, 311 S.W.2d 326, 329 (1957) (determining that statute setting forth procedure for resale of land acquired by tax deed requires substantial compliance).

"Substantial compliance" has been defined as *"actual* compliance in respect to the substance essential to every reasonable objective of the statute." *Stasher v. Harger–Haldeman,* 58 Cal.2d 23, 22 Cal.Rptr. 657, 660, 372 P.2d 649, 652 (1962); "[T]here has been substantial compliance ... when there has been a partial compliance and when it is reasonable to conclude that the objective sought by the [statute] has been as fully attained thereby, as a practical matter, as though there had been a full and literal compliance." *Opinion of the Justices,* 275 A.2d 558, 562 (Del.1971). Thus, "when there is such actual compliance as to all matters of substance then mere technical imperfections of form or variations in mode of expression ... or such minima as obvious typographical errors, should not be given the stature of non-compliance...." *Stasher,* 22 Cal.Rptr. at 660, 372 P.2d at 652.

Accordingly, this Court must determine whether a notice of sale that contained an erroneous statement concerning the equity of redemption substantially complied with T.C.A. § 67–5–2502. It is clear that T.C.A. § 67–5–2502 does not specifically require the inclusion of a statement concerning the terms of sale or the period for redemption. Nevertheless, in order to determine whether there has been substantial compliance with a statute, it is necessary to determine the underlying purpose of the statute. *Opinion of the Justices,* 275 A.2d at 562. We believe that the underlying purpose of T.C.A. § 67–5–2502 is to prevent the sacrifice of land by

insuring the presence of prospective purchasers at a tax sale.

■ It further appears to this Court that when the terms of sale and other non-mandatory items are included in a notice and advertisement, they are included primarily for the convenience and assistance of the prospective buyer. Thus, we believe that the inclusion of any non-mandatory information in such a notice and advertisement should be treated as mere "surplusage" and should not be deemed to impair the substantive rights of a party because of omission or defective statement. *See Conn v. Hudson*, 350 Pa. 626, 39 A.2d 826, 828 (1944); *See also Bluff City Lumber Co. v. Bank of Clarksville*, 95 Ark. 1, 128 S.W. 58, 60 (1910).

Given that T.C.A. § 67–5–2502 does not require the inclusion of a statement concerning the period of redemption, we do not believe that an unexplained error, misstating the appropriate period of redemption, in the notice and advertisement of a tax sale should work to invalidate that tax sale if there was substantial compliance with the mandatory provisions of the statute. Therefore, we hold that the Morrows' argument that the notice was defective due to the inclusion of an erroneous period for redemption is without merit.

■ As an alternative argument, the Morrows contend that if the notice did comply with the applicable law Fayette County must be bound by the official statements contained in the notice. We think that this argument is

also without merit since it is undisputed that none of the Morrows in this case read the notice or relied upon it when they waited more than one year to redeem the land. Moreover, their argument is further undermined by the fact that the erroneous statement was later corrected at the tax sale prior to Dr. Hill's purchase of the land.

We turn now to the issue of whether the tax sale is invalid due to the fact that Fayette County failed to give proper notice to Donnie Steve Morrow, John Berry Morrow, Gerald Russell Morrow, Jr., and Tracy Ann Morrow Medley of the suit for delinquent taxes and the resulting tax sale although they were undisputedly non-possessory owners of the subject property. In response to the Morrows' original contention that the omission of the names of the non-possessory owners in the notice and advertisement invalidated the tax sale, Dr. Hill argues on appeal that T.C.A. § 67–5–2502(c)(1) placed an affirmative duty on all non-possessory owners to file a declaration of interest in the property with the Fayette County Property Assessor. Dr. Hill further contends that when the non-possessory owners failed to file such a declaration they waived any right to notice of the tax sale as well as to notice of the suit for delinquent taxes as mandated by T.C.A. § 67–5–2415.[2]

■ On appeal, Plaintiffs abandon their original argument that the notice and advertisement of the tax sale was fatally defective due to the omission of the names of the non-

---

**2.** T.C.A. § 67–5–2415 (1994) provides:
  (a) The defendant, when served in any manner according to the Rules of Civil Procedure, either by mail or in person, does not have to be served with a copy of the complaint and exhibit and instead, the clerk may issue a notice to accompany the summons.
  (b) The notice shall identify the suit mentioned in the summons sufficiently to enable the taxpayer to know what delinquent taxes the taxpayer is being sued for and what property is being subject to the lien.
  (c) The summons and notice may be for more than one (1) suit where suits have been consolidated.
  (d) Constructive service of process shall be made as now provided by law.
  (e) In all counties, personal service of process on the defendant may be dispensed with and the summons and notice may be sent by certified or registered mail, return receipt requested.

  (1) The return of the receipt signed by the defendant, spouse, or other person deemed appropriate to receive summons or notice as provided for in the Rules of Civil Procedure, or its return marked "refused," evidenced by appropriate notation of such fact by the postal authorities, and filed as a part of the record by the clerk, with notation on the docket of the true facts, shall be evidence of personal notice.
  (2) In the event the return receipt does not establish that it was signed by the defendant or the defendant's authorized agent or that the notice was refused, then the court may find through independent proof that the defendant had actual notice in compliance with notice requirements.
  (3) If the court does not find that the defendant had actual notice, it may order such other and further action to be taken to give the defendant notice.

possessory owners. In their brief, Plaintiffs concede that such an omission did not render the tax sale invalid and they rely solely upon the erroneous statement concerning the period for redemption in arguing that the tax sale was invalid. As a result of Plaintiff's concession, we choose not to address the merits of Plaintiffs' original contention.

However, since the filing of their brief, Plaintiffs have submitted for this Court's consideration the recent case of *Freeman v. City of Kingsport,* 926 S.W.2d 247 (Tenn. App.1996), where the Eastern Section of this Court dealt with a situation similar to the one presented in the instant case. In *Freeman,* the City of Kingsport unknowingly filed a delinquent tax suit against a deceased property owner. When service of process was returned with a notation that the property owner was deceased, the City caused an order of publication to appear in the local newspaper purporting to give notice of the suit to the unborn and unknown heirs of decedent. When no one answered the complaint, default judgment was entered and the property was sold at a tax sale.

The plaintiffs were heirs of a decedent and brought suit to set aside the tax sale, complaining that publication for the unknown heirs of decedent was ineffective to give statutorily required notice to the non-possessory owners of the subject property and arguing that the resulting default judgment was voidable under the due process clause of the United States Constitution. The City filed a motion to dismiss pursuant to T.R.C.P. 12.02(6), alleging that T.C.A. § 67–5–2502 was completely dispositive of plaintiffs' claims due to the fact that the plaintiffs had not filed a declaration of interest with the property assessor as required by T.C.A. § 67–5–2502. The trial court granted the City's motion and dismissed the plaintiffs' claim.

In reversing the trial court's ruling, the Eastern Section of this Court held that, notwithstanding the language of T.C.A. § 67–5–2502, constitutional safeguards must be satisfied when constructive notice is used in lieu of actual notice in a delinquent taxpayer suit. The court, citing to the United States Supreme Court decision of *Mennonite Board of Missions v. Adams,* 462 U.S. 791, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983), determined that considerations of due process require that an interested party receive actual notice of a proceeding *in rem* which affects their interest in property if the interested party's name and address are reasonably ascertainable.

In making its determination, the *Freeman* Court quoted from the Supreme Court's decision in *Mennonite Board of Missions,* wherein the Supreme Court noted:

> Beginning with [*Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950) ], this Court has recognized, contrary to the earlier line of cases, that "an adverse judgment *in rem* directly affects the property owner by divesting him of his rights in the property before the court." *Shaffer v. Heitner, supra,* 433 U.S. [186], at 206, 97 S.Ct. [2569], at 2580 [53 L.Ed.2d 683 (1977) ]. In rejecting the traditional justification for distinguishing between residents and nonresidents and between *in rem* and *in personam* actions, the Court has not left all interested claimants to the vagaries of indirect notice. Our cases have required the State to make efforts to provide actual notice to all interested parties comparable to the efforts that were previously required only in *in personam* actions. (Emphasis supplied.)

*Freeman,* 926 S.W.2d at 249–50. After considering various precedents, the *Mennonite Board of Missions* Court held that actual notice is required in *in rem* proceedings if the interested party's name and address are reasonably ascertainable. The *Freeman* court concluded that the same due process standard is essentially codified at T.C.A. § 21–1–203 which dispenses with the requirements of actual notice and allows constructive notice to a party only after there has been a diligent inquiry to locate and notify that party.[3]

While the Plaintiffs did not specifically raise the issue of the County's failure to

---

**3.** T.C.A. § 21–1–203 (1994) provides in pertinent part:

(a) Personal service of process on the defendant in a court of chancery, is dispensed with in the following cases:

give actual notice to the non-possessory owners in the instant case, we raise it *sua sponte* since proper notice is necessary in order to confer subject matter jurisdiction on the court in suits to enforce tax liens. *See Watson v. Waters,* 694 S.W.2d 524, 527 (Tenn. App.1984); *West v. Jackson,* 28 Tenn.App. 102, 186 S.W.2d 915, 917 (1944). This Court is required to consider the subject matter jurisdiction of both this Court and the trial court regardless of whether the existence thereof is presented as an issue. Rule 13(b) T.R.A.P.; *Wunderlich v. Fortas,* 776 S.W.2d 953, 957 (Tenn.App.1989).

It is evident from the record that the non-possessory owners in this case did not receive actual notice of the suit for delinquent taxes filed by the County. Accordingly, pursuant to *Freeman,* we believe that this case should be remanded for a determination of whether the names of the non-possessory owners were reasonably ascertainable. If the trial court finds that the names of the non-possessory owners were reasonably ascertainable, we believe that *Freeman* requires that they be given actual notice of the suit for delinquent taxes in order for the tax sale to be held valid.

In her second issue, Dr. Hill argues that, if the trial court did not err in determining that the Morrows are entitled to redeem their property, it erred in determining that Dr. Hill was entitled only to $3,070.60 of her attorney fees. Dr. Hill argues that she was entitled to be "made whole" by the Morrows. Consequently, she argues that the trial court should have awarded her attorney fees in the amount $5,166.89. The Morrows, on the other hand, argue that the trial court erred in awarding any amount of attorney fees to Dr. Hill when there was no statutory provision or contractual agreement between the parties authorizing it to do so.

It is a general rule in this State that litigants must pay their own attorney fees. *Howard G. Lewis Const. Co., Inc. v. Lee,* 830 S.W.2d 60, 64 (Tenn.App.1991). In the absence of a statutory provision or a contractual agreement between the parties, attorney fees, incurred by a litigant, are not a proper element of damages. *John J. Heirigs Const. Co., Inc. v. Exide,* 709 S.W.2d 604, 609 (Tenn. App.1986); *Goings v. Aetna Cas. & Sur. Co.,* 491 S.W.2d 847, 848 (Tenn.App.1972). Such an award is contrary to the public policy of Tennessee. *Howard G. Lewis Const. Co., Inc.,* 830 S.W.2d at 64.

T.C.A. § 67–5–2703 specifies which fees must be paid by a redeeming party. That statute provides in pertinent part:

In order to redeem property which has been sold, any person entitled to redeem the property shall pay to the clerk of the court who sold the property the amount paid for the delinquent taxes, interest and penalties, court costs and any court ordered charges, and interest at the rate of ten percent (10%) per annum computed from the date of the sale on the entire purchase price paid at the tax sale.

T.C.A. § 67–5–2703 (1994). This statute does not specifically provide for attorney fees. Therefore, we hold that it was error for the trial court to award attorney fees to Dr. Hill. We believe that the threat of litigation and its attendant costs are one of the risks in purchasing land at a tax sale. These costs are not reimbursable under the statute, and they must therefore be borne by the litigant under the law of this State.

The judgment of the trial court is affirmed in part and reversed in part and this cause remanded for further proceedings consistent with this opinion. Costs on appeal are taxed equally to Appellant and Appellees, for which execution may issue if necessary.

CRAWFORD, P.J.(W.S.), and TOMLIN, Senior Judge, concur.

---

(4) When the name of the defendant is unknown and cannot be ascertained upon diligent inquiry;

(5) When the residence of the defendant is unknown and cannot be ascertained upon diligent inquiry;

(b) To dispense with process in any of the above cases, the facts shall be stated under oath in the bill, or by separate affidavit, or appear by the return.